IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| G4S SECURE INTEGRATION LLC, f/k/a G4S Technology, LLC, a Delaware limited liability company, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 17 C 4277 |
| v. | ) ) | Judge Robert W. Gettleman |
| EX2 TECHNOLOGY, LLC, a Nebraska limited liability company, KYLE HILDEBRAND, an individual, MISTY STINE, an individual, JAMES KAWAMOTO, an individual, GREGORY BENAK, an individual, JAYSON SWOPE, an individual, JOEL MULDER, an individual and JAY JORGENSEN, an individual, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff G4S Secure Integration, LLC f/k/a G4S Technology, LLC has brought a three count complaint against defendants EX2 Technology, LLC, Kyle Hildebrand, Misty Stine, James Kawamoto, Gregory Benak, Jayson Swope, Joel Mulder, and Jay Jorgensen, accusing: (1) all defendants of violating the Defend Trade Secrets Act, 18 U.S.C. § 1836 (Count I); (2) EX2 of violating § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); and (3) EX2 of violating the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510. Immediately after filing the complaint, plaintiff moved for a preliminary injunction, seeking to enjoin defendants from competing with plaintiff in the telecommunications and network infrastructure markets.

In response, five of the seven individual defendants (Hildebrand, Stine, Kawamoto, Benak and Swope) have moved to dismiss for lack of personal jurisdiction, and all defendants have moved to dismiss or stay the instant action pending resolution of a parallel case brought by

plaintiff against EX2, Hildebrand, Stine, and Kawamoto in Nebraska state court (the "Nebraska action"). For the reasons described below, the motion to stay the instant action is granted.

## BACKGROUND

In November 2009 plaintiff purchased Adesta LLC (which later became known as G4S), a telecommunications and infrastructure company. Six of the seven individual defendants were employed in senior management, executive and/or corporate officer roles with Adesta at the time of the purchase, and remained in those roles. Defendant Hildebrand joined Adesta in 2010. All of the individual defendants had signed Property Matters Agreements ("PMA"s) with Adesta in which they acknowledged that they had learned proprietary information that could not practicably be disregarded, and that the provision of similar services to a competitor immediately following their term with Adesta would inherently and inevitably result in the use of proprietary information even if the employee used best efforts to avoid doing so. As a result of that acknowledgment, the PMAs contained a twelve month non-solicitation clause and a two year non-disclosure of proprietary information clause.

The instant complaint alleges that beginning in August 2014 the individual defendants, while still working for plaintiff, decided to start their own competing business. Stine allegedly formed EX2 in August 2014. Kawamoto left plaintiff on October 1, 2014, to become president and chief financial officer of EX2. Hildebrand left plaintiff on December 16, 2014, to become vice-president of project development at EX2. Stine left plaintiff on January 1, 2015, to become executive vice-president of business developmen,t and Benak left plaintiff on May 15, 2015, to become vice-president of legal affairs at EX2. Mulder and Swope both left plaintiff in April

2015 to become vice-president of sales and vice-president of engineering, respectively, at EX2. Jorgensen left plaintiff in May 2015, to become EX2's vice-president of operations.

Plaintiff filed the Nebraska action on June 22, 2015, against EX2, Hildebrand, Stine, and Kawamoto. The complaint contains thirteen counts, but essentially alleges that Hildebrand, Stine, and Kawamoto breached the non-solicitation (of both employees and customers) and the non-disclosure provisions of their PMAs, and also breached fiduciary duties to plaintiff. The Nebraska action complaint also alleges that EX2 tortiously interfered with plaintiff's business relationship with its own employees. The Nebraska action does not name instant defendants Benak, Swope, Mulder, and Jorgensen, but describes them as "key employees," and many of the claims are based, at least in part, on their actions.

Plaintiff filed the instant action on June 6, 2017, almost exactly two years after filing the Nebraska action. The instant complaint contains much of the same background allegations as the Nebraska action complaint, including attaching the defendants' PMAs to establish the proprietary nature of the information that the individual defendants learned through their employment with plaintiff. The instant complaint contains no claims for breach of those agreements (they are undoubtedly expired), but claims that defendants violated and/or are still violating the recently enacted (May 11, 2016) Defend Trade Secrets Act, based on defendants' use of the "proprietary information" defendants learned while employed with plaintiff. Notably, the complaint contains no allegation that any defendant "took" anything, such as customer lists, or downloaded and retained any information. Instead, plaintiff's claims are based entirely on the knowledge defendants retained when they left plaintiff, and as such are based entirely on

defendants' acknowledgment in the PMAs that they would not be able to compete without using plaintiff's proprietary information despite their best efforts to do so.

**DISCUSSION**

"Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." AAR Int'l., Inc. v. Nimelias Enterprises S.A., 250 F.3d 510, 517 (7th Cir. 2001) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). Nonetheless, animated by concerns about "wise judicial administration" and "conservation of judicial resources," in Colorado River the Supreme Court held that under "limited" and "exceptional" circumstances, a federal district court may stay or dismiss[1] an action when there is an ongoing parallel action in state court. Colorado River, 424 U.S. at 818; LaDuke v. Burlington N.R. Co., 879 F.2d 1556, 1558 (7th Cir. 1989).

The primary purpose of the Colorado River doctrine is to conserve both state and federal judicial resources and prevent inconsistent results. Freed v. J.P. Morgan Chase Bank, N.A., 756 F.3d 1013, 1018 (7th Cir. 2014). The court "cannot lightly abjure its responsibility to assert jurisdiction," however, and "if there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation." Lumen Constr., Inc. v. Brant Constr. Co., Inc., 780 F.2d 691, 694 (7th Cir. 1985); AAR Int'l., 250 F.3d at 518 (internal citations omitted).

---

[1]The Seventh Circuit has held that a stay instead of a dismissal is the appropriate procedure because a stay keeps the federal forum available if the state court action does not result in a final judgment. Rosser v. Chrysler Corp., 864 F.2d 1299, 1308 (7th Cir. 1988).

4

The court conducts a two-step analysis to determine whether a stay is appropriate. First, the court must determine whether the state and federal actions are parallel. Freed, 756 F.3d at 1018 (citing AAR Int'l., 250 F.3d at 518). If the actions are not parallel, Colorado River does not apply and the court need not reach the second step. Id. If the two cases are parallel, the court must decide whether abstention is appropriate by carefully weighing ten non-exclusive factors: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. Id. (citing AAR, Int'l., 250 F.3d at 522). No single factor is determinative, and the careful weighing of all factors is necessary to determine whether abstention is warranted. Id.

Suits are parallel if "substantially the same parties are litigating substantially the same issues simultaneously in two fora." AAR Int'l., 250 F.3d at 518. The suits need not be "formally symmetrical" or identical, but there must be "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." Freed, 756 F.3d at 1018-19. The court should examine whether the cases raise the same legal allegations or arise from the same set of facts, id. at 1019, but the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel. Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc., 962 F.2d 698, 701 (7th Cir. 1992).

In the instant case, there is little doubt that "substantially the same parties are litigating substantially the same issues simultaneously." AAR Int'l., 250 F.3d at 518. G4S is the plaintiff in both actions. EX2, Hildebrand, Stine, and Kawamoto are defendants in both actions. True, there are additional individual defendants in the instant case, but the "parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants . . .." Freed, 756 F.3d at 1020. The decision to exclude Benak, Swope, Mulder and Jorgensen from the Nebraska action was entirely plaintiff's choice. Its claims against those defendants are exactly the same as the claims against the Nebraska action defendants.

As to those claims, the issues in the Nebraska action arise from the same set of facts as the instant case. The key issue in both suits is whether defendants are unfairly competing against plaintiff by improperly using plaintiff's proprietary information. The issue in the Nebraska action – whether the individual defendants have breached the non-solicitation and non-disclosure provisions of their PMAs – is at the heart of the plaintiff's Defend Trade Secrets Act claim in the instant action. Although plaintiff does not specifically ask this court to determine the validity of the PMAs, or whether any defendant breached, the court must necessarily do so to determine the validity of plaintiff's Defend Trade Secrets claim. To prevail under that statute, plaintiff must demonstrate that defendants misappropriated its trade secrets. 18 U.S.C. § 1836(b)(1). Misappropriation requires a showing that the information was "acquired by improper means" or that there was a "duty to maintain the secrecy" of the information. 18 U.S.C. § 1839(5). There is no allegation that defendants acquired any information improperly, and any duty to maintain secrecy derives, at least in part, from the PMAs. Thus, plaintiff's claims require both courts to interpret the PMAs which, by their own terms are to be interpreted under Nebraska law.

6

Plaintiff argues that the resolution of the Nebraska case will not necessarily resolve its Lanham Act and Illinois Deceptive Trade Practices Act claims, both of which allege that defendants have made knowingly false and misleading statements about plaintiff and its ability to service its customers. But the parallel nature of the actions cannot "be dispelled by repackaging the same issue under different cause of actions." Freed, 756 F.3d at 1020. As defendants note, both counts allege that defendants were unfairly soliciting plaintiff's customers, and the relief sought in both cases is for an order essentially enjoining defendants from competing against plaintiff. Plaintiff has the ability to get all of the relief it requests in the Nebraska action. If the Nebraska court enjoins the defendants in that case, especially including EX2 (which employs all the individual defendants in this case) from contacting any of plaintiff's customers or from competing in the market, plaintiff will have effectively enjoined all defendants from making false statements about it. Thus, the court concludes that there is a substantial likelihood that the Nebraska action will dispose of all of the claims in the instant case, and that the two actions are parallel.

Having determined that the actions are parallel, the court must analyze the ten non-exclusive factors to determine whether "exceptional circumstances" exist to justify deference to the state court. As noted, "no one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." Colorado River, 424 U.S. at 818-19. The court's decision on whether to abstain must be based "on an assessment of the totality of the circumstances," Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896, 900 (7th Cir. 1999), and the court has the "discretion to apply more significant weight and analysis to

7

those factors that are most relevant to the case at hand." Freed, 756 F.3d at 1021. Because of the presumption against abstention, absent or neutral factors weigh in favor of exercising jurisdiction. Huon v. Johnson & Bell, Ltd., 657 F.3d 641, 648 (7th Cir. 2011).

1.      Whether the State has Assumed Jurisdiction Over Property

The state court has not assumed jurisdiction over any property. Thus, this factor weighs against abstention.

2.      The Inconvenience of the Federal Forum

Because G4S is the plaintiff in both actions, the two courts are equally convenient to it. Plaintiff argues that the federal forum is not inconvenient to defendants because Mulder and Jorgensen reside in this district, and a substantial number of plaintiff's customers reside in Illinois. As defendants point out, however, EX2 resides in Nebraska, as do five of the individual defendants. Indeed, those five defendants have raised a serious argument that this court lacks personal jurisdiction over them. Thus the court concludes that this factor favors abstention.

3.      The Desirability of Avoiding Piecemeal Litigation

This factor "does not turn on formal identity of the issues but on concerns about the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority." Freed, 756 F.3d at 1022. When two courts must oversee similar proceedings such as pre-trial motions and discovery matters, as well as consider similar issues, evidence, and witnesses, it effectively "duplicat[es] the amount of judicial resources required to reach a resolution." Id.

In the instant case, the state and federal forums have substantially the same parties before them, litigating substantially the same issues arising from the same set of facts. If both

proceedings are allowed to proceed there is a strong possibility of inconsistent verdicts as to the validity and obligations under the PMAs, which could "jeopardize the appearance and actuality of justice." Id. Thus, this factor strongly favors abstention.

4.    The Order in Which Jurisdiction was Obtained by the Concurrent Forums

Plaintiff filed the Nebraska action in 2015. It waited almost two years before filing the instant action. Plaintiff argues that it could not have brought its Lanham Act and Illinois Deceptive Trade Practices Act claims earlier, but it never moved for a preliminary injunction in the Nebraska action, which could have prevented defendants from competing against plaintiff in any manner. The Nebraska court has been overseeing the dispute between the parties for over two years, and the case is set for trial in January 2018. The instant case is still in its infancy. Consequently, the court concludes that this factor strongly favors abstention.

5.    The Source of Governing Law, State or Federal

Plaintiff argues that because the instant action has two federal claims this factor weighs against abstention. See Moses H. Cohen Mem'l Hosp. v. Mercury Construction Corp., 460 U.S. 1, 26 (1983). As noted above, however, plaintiff's Defend Trade Secrets claim is based entirely on the validity and enforceability of the PMAs. By their own terms those agreements are to be interpreted under Nebraska law, with which the Nebraska court is undoubtedly more familiar. A "state court's expertise in applying its own law favors a Colorado River stay." Freed, 756 F.3d at 1022. Thus, this factor weighs in favor of abstention.

6.    The Adequacy of State-Court Action to Protect the Federal Plaintiff's Rights

Plaintiff argues that this factor "can only be a neutral factor or one which weighs against, not for, abstention." Evanston Ins. Co. v. Jimco, Inc., 844 F.2d 1185, 1193 (5th Cir. 1988). That

is obviously not the law in the Seventh Circuit, because in <u>Freed</u>, the court found that this factor favored abstention. <u>Freed</u>, 756 F.3d at 1023. As did the plaintiff in <u>Freed</u>, the instant plaintiff chose to file both in the Nebraska court and in this court. As in <u>Freed</u>, plaintiff's substantial rights asserted in this court can be protected by granting a stay, rather than dismissal, "because plaintiff can revive [its] federal litigation depending on the outcome of state court or in the unlikely event that the state court action is inadequate." <u>Id</u>. Therefore, this factor favors abstention.

7.    <u>The Relative Progress of State and Federal Proceedings</u>

Plaintiff filed the Nebraska action over two years ago. That court has already denied a motion to dismiss, discovery has proceeded under a protective order, and the case is currently set for trial in January 2018. By contrast, little has happened in the instant case aside from plaintiff's motion for preliminary injunction and defendants' motion to dismiss. There is no doubt that the state court has expended more judicial resources than this court. <u>Id</u>. at 1023. Thus, this factor strongly favors abstention.

8.    <u>The Presence or Absence of Concurrent Jurisdiction</u>

Plaintiff argues that this factor weighs against abstention because defendants Mulder and Jorgensen, both of whom are alleged to have played key roles in misappropriating plaintiff's trade secrets, are absent from the Nebraska action. Their absence, however, appears to have been by plaintiff's choice and, as noted above, there is a serious question as to whether this court has personal jurisdiction over the other individual defendants. Moreover, while this court has original jurisdiction over the Defend Trade Secrets claim, that jurisdiction is not exclusive to the federal courts. <u>See</u> 18 U.S.C. § 1836(c). As noted, plaintiff's claims under that Act are tied to

the validity of the PMAs, which is to be decided under Nebraska law. Consequently, the court concludes that this factor also favors abstention. Id.

9.  The Availability of Removal

This factor is intended to prevent a federal court from hearing claims that are closely related to state proceedings that cannot be removed. Id. The factor plays little role when the party bringing the duplicative suit is the plaintiff because it could have brought all its claims in one court. Id. Plaintiff argues that because this factor is inapplicable it weighs in favor of the court exercising jurisdiction. Even if this correct, given that plaintiff is the plaintiff in both cases, the factors is entitled to little weight.

10.  The Vexatious or Contrived Nature of the Federal Claim

Defendant argues that the instant case was motivated by plaintiff's desire to forum shop in light of its decision not to seek a preliminary injunction in the Nebraska action, that court having set a January 8, 2018, trial date, as well as plaintiff's fear of an unfavorable ruling given the Nebraska court's statement in its order denying the motion to dismiss that enforcement of the PMAs is "questionable." As noted in Freed, the federal suit can be considered contrived and vexatious when the claims and parties could have been included in the original state court proceedings. Id. Thus, this factor also favors abstention.

In sum, numerous factors favor abstention, while only a few slightly weigh against it. Consequently, the court grants defendants' motion and stays the instant action pending resolution of the Nebraska state court action.

## CONCLUSION

For the reasons stated above, defendants' motion to stay (Doc. 21) is granted. Plaintiff's motion for a preliminary injunction (Doc. 9) and the motion to dismiss filed by defendants Hildebrand, Stine, Kawamoto, Benak and Swope (Doc. 18) are stricken without prejudice to renewal if and when the stay is lifted. The status hearing set for August 1, 2017, is stricken. This matter is set for a report on the status of the Nebraska action on January 31, 2018 at 9:00 a.m.

**ENTER:** **July 19, 2017**

**Robert W. Gettleman**
**United States District Judge**